**204**

1833.

Frelinghuysen
v.
Colden.

FRELINGHUYSEN & BRUEN, trustees, &c. *vs.* COLDEN
and others.

PELLETREAU *vs.* FRELINGHUYSEN and others.

Where mortgaged premises are sold under a decree of foreclosure, the purchaser is entitled to the assistance of the court in obtaining possession, as against the parties to the suit, or those who have come into possession under them subsequent to the filing of the notice of the commencement of the suit.

But the court has no jurisdiction, by a summary proceeding, to determine the rights of third persons, claiming title to the premises, who have recovered the possession by legal and adverse proceedings against a party to the suit, under a claim of right which accrued previous to the filing of the bill of foreclosure.

Where a person who was proved to be insolvent was in possession of mortgaged premises, which were claimed by another, under a decree of foreclosure and sale to him, and the person so in possession filed a bill to redeem the premises, on the ground that he was not a party to the bill of foreclosure, the court directed a receiver to be appointed to receive the rents and profits of the premises pending the litigation, unless the complainant should elect to deliver up the possession, or give security for the rents and profits, or pay into court the mortgage money admitted to be due.

August 6.

In May, 1829, C. R. Colden purchased of the heirs of S. Eldert a piece of land, in the town of Jamaica, containing about 54 acres, being a part of the union race course, and gave a mortgage on the same to secure a portion of the purchase money. In July thereafter Colden gave another mortgage on the same premises to A. Q. Spencer, to secure the payment of the sum of $1500. Colden also contracted with J. Cozine for the purchase of two pieces of land, the one containing fifteen acres, and forming a part of the race course, and the other being a farm adjacent thereto. On the fifth of August, 1829, Colden conveyed the 54 acres to C. C. Moore, and also assigned to him the contract for the purchase of the other two parcels of land. In the spring or summer of 1830, Cozine conveyed to Moore, and took from him a mortgage on the 15 acres, for $1000 of the purchase money, and another mortgage on the farm, to secure $5000 of the purchase money thereof. On the 12th of August, 1829, A. Burr recovered a judgment against Colden, under which J. Pelletreau afterwards became

the purchaser of all Colden's interest in these several pieces of land, on a sale thereof by the sheriff, in April, 1831. In June or July, 1830, Moore and Colden executed to Frelinghuysen and Bruen a mortgage on the same lands for the sum of $5500, part of which was advanced to A. O. Spencer, and the heirs of Eldert, for the amount of their respective mortgages; which mortgages were at the same time assigned to Frelinghuysen and Bruen as a part of their security for the $5500. In December, 1830, Frelinghuysen and Bruen filed their bill, in the first of the above causes, to foreclose the three several mortgages, in their hands; and the mortgagors, together with Cozine, who held the prior mortgages on some part of the premises, were made defendants. But as Burr's judgment was not supposed to be a lien on any part of the mortgaged premises, he was not made a party. After the filing of the bill, but before the sale by the master under the decree of foreclosure, Pelletreau perfected his purchase under the judgment, by taking a deed from the sheriff; and by a summary proceeding under the statute, against Colden the judgment debtor, obtained possession of the premises. Upon the sale under the decree, A. Dey, as the trustee of Haskins and Wells, purchased the fifty-four acre lot and the fifteen acre lot, constituting the Union race course, and Cozine purchased the residue of the mortgaged premises. Pelletreau then filed his bill, in the last of the above causes, against the parties in the first suit and the purchasers at the master's sale, alleging, among other things, that he had a specific equitable lien upon the two pieces of land purchased of Cozine, for monies advanced to Colden towards the purchase of the same; and that the judgment of Burr was also a lien on the fifty-four acre lot and on Colden's interest in the other lots, the conveyance and assignment to Moore being fraudulent and void. He therefore claimed the right to redeem, upon payment of the amount due on the mortgages which were prior to the judgment of Burr, and upon the two subsequent mortgages, given to Cozine by C. C. Moore. A. Dey thereupon presented a petition to the court, stating the proceedings had in the foreclosure suit, and his purchase of the two lots constituting the union race course, and that Pelletreau had gone

into possession, under Colden, pending the foreclosure suit, and that he refused to deliver up the possession of the premises according to the directions of the decree. The petitioner also stated the proceedings in the last entitled suit, and that the property was exposed to deterioration and loss, and that Pelletreau was destitute of property, and unable to pay the rents and profits of the premises or the damages which the petitioner might sustain by his continued possession thereof. The petititoner therefore prayed that the tenant of Pelletreau might attorn to him, and that the possession of the race course might be delivered to him; or that a receiver might be appointed to take the management and control of the same; or that Pelletreau might give security to pay the rent of the premises and for the damage they might sustain while in his possession, in case the title of the petitioner should be established; or that he might have such other relief as might be just and equitable. On the part of Pelletreau an affidavit was read, showing that he went into possession pending the foreclosure suit by means of an adverse proceeding against Colden, and not under him. In the affidavit he also denied that he was totally destitute of property, as stated in the petition; but did not state any particular sum, or amount of property, to which he was entitled, over and above his debts. Burr also put in an affidavit, denying that he had any personal interest in the premises.

*B. F. Butler & B. W. Bonney,* for the petitioner.

*W. Kent,* for Pelletreau and A. Burr.

THE CHANCELLOR. Where mortgaged premises are sold under a decree of foreclosure, the purchaser is entitled to the assistance of the court in obtaining the possession, as against parties to the suit, or those who have come into possession under them subsequent to the filing of the notice of the commencement of the suit. (2 *R. S.* 191, § 152.) But this court has no jurisdiction, in a summary proceeding, to determine the rights of third persons, claiming title to the premises, who have recovered the possession of the same by legal and adverse proceedings against a party to the suit, under a

claim of right which accrued previous to the filing of the bill of foreclosure. In this case Pelletreau claimed a right to the possession of the premises under a title paramount to the rights acquired by the filing of the bill, against Colden. And when he obtained that possession by due course of law, it related back to the recovery of the judgment, or at least to the issuing of the execution; so that he is not to be considered as entering under Colden, pending the suit, within the spirit and intent of that part of the decree which directs those persons who have come into possession, under a party, since the commencement of the suit, to deliver possession to the purchaser. In this case, if the only claim of the purchaser, to the possession of the premises, or to other relief in this court, depended upon the proceedings in the first suit, he would be left to his ordinary remedy, at law, by an action of ejectment against the person in possession. The petitioner's claim to relief, if any, therefore, arises from the proceedings in the second suit, in which Pelletreau is a party as complainant. The owners of the mortgages which were given for the purchase money, whether before or after the judgment of Burr, are entitled to a preference in payment, even if the conveyance and assignment from Colden to Moore was fraudulent; and Pelletreau must pay the amount due on those mortgages before he can be permitted to redeem. The petitioner, as the purchaser under the decree of foreclosure, became entitled to all the legal and equitable interest of the several parties to that suit in the two lots constituting the union race course. If Pelletreau redeems, he must, at all events, pay to the petitioner the amount of the $1000 mortgage to Cozine on the fifteen acres, and of the Eldert mortgage on the fifty-four acres, and also whatever may be justly due on the Spencer mortgage. During the controversy in this court as to the validity of the conveyance from Colden to Moore, it would be improper and unreasonable that the petitioner should be compelled to litigate the same question at law, for the purpose of obtaining the possession of the property and of recovering the mesne profits, if it should eventually appear that Pelletreau has no right to redeem, or if he should neglect to redeem after such right was established. He must therefore give up the possession to the purchaser, or give secu-

1833.

Frelinghuysen
v.
Colden.

rity to pay the mesne profits, and the damages the petitioner may *sustain* by his retaining the possession, if it should turn out that he has no right to redeem ; or he must pay into court the amount of the Eldert and Cozine mortgages, which will belong to the petitioner in any event, even if all the allegations in the bill in the last cause should be established by the proofs. If this money is paid into court, it will discharge Pelletreau from any further claim for interest on that amount if he is permitted to redeem ; and if it shall appear that he has no right to redeem, and that he is wrongfully withholding the possession from the petitioner, the mesne profits and damagss may be paid out of the money thus brought into court, and the residue will be refunded to Pelletreau.    And in the mean time the fund may be invested for the benefit of whoever may be eventually entitled to the same.    If Pelletreau shall not, within ten days after the entry of the order in this case, give to the petitioner's solicitor a written notice of his election to comply with one of the conditions above mentioned, and actually comply with the same within twenty days thereafter, it must be referred to master Codwise, to appoint a receiver, and to take from him the requisite security.    The receivership, however, must be without prejudice to the legal or equitable rights of Botts.

The agreement between the petitioner and Botts was a mere contingent arrangement, depending upon the result of the litigation between Pelletreau and the petitioner.    It was not intended to deprive the latter of any of his rights or remedies as against Pelletreau.    And from the very nature of the agreement, it cannot be consummated until the result of this litigation is known.    It therefore forms no valid objection to the relief sought for by this petition.    If Pelletreau elects to give security, the amount of the bond and the sufficiency of the sureties must be settled and approved of by the master ; and upon the usual notice to the petitioner to attend upon the determination of those questions.